# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

In re:

EVALUATION SOLUTIONS, LLC,

ES APPRAISAL SERVICES, LLC,

Case No.: 3:13-bk-00446-JAF

Jointly Administered with Case
No. 3:13-bk-00447-JAF

Chapter 7

Debtors.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon the Motion to Approve Settlement By and Among the Chapter 7 Trustee, Summit Financial Resources, L.P. and JPMorgan Chase Bank, N.A. (the "Motion") (Doc. 72) filed on May 2, 2013. Objections to the Motion were filed by (i) Layne Sink Appraisals (Doc. 75), (ii) Ryan J. Dail (Doc. 76), (iii) Amerappraise, LLC (Doc. 77),[1] (iv) Gregory Peraino (Doc. 78), (v) William Crawford (Doc. 80), (vi) Provalue, Inc. ("Provalue") (Doc. 81) (the "Provalue Objection"), and (vii) Ford Appraisal Service (Doc. 87) (collectively, the "Objections"). On June 4, 2013, the Court held an evidentiary hearing on the Motion (the "Hearing").

At the conclusion of the Hearing, the Court took the following issues under advisement: (i) whether appraisers had viable claims that could be brought against JPMorgan Chase Bank, N.A. ("Chase") outside of this bankruptcy case that did not belong to the Chapter 7 Trustee, and (ii) even if such claims exist, whether the agreement attached to the Motion should be approved.

---

[1] The Court issued an order striking the objection of Amerappraise, LLC because it was filed by a non-lawyer (Doc. 79).

Except for those issues, the Court found on the record at the Hearing that the Motion should be granted and the agreement attached to the Motion approved. The Court directed the Trustee and Provalue to submit proposed Findings of Fact and Conclusions of Law in support of their respective positions by June 11, 2013. In accordance with the evidence and testimony presented and the arguments of counsel for the Trustee and interested parties at the Hearing, and the Court's review of the Motion, Objections, and briefs in support thereof, the Court makes the following Findings of Fact and Conclusions of Law in accordance with Fed. R. Bankr. P. 7052.

## **FINDINGS OF FACT**

On January 25, 2013 (the "Petition Date") Evaluation Solutions, LLC ("Evaluation Solutions") and ES Appraisal Services, LLC ("ES Appraisal" and collectively, with Evaluation Solutions, the "Debtors") filed voluntary petitions seeking relief under chapter 7 of the Bankruptcy Code. On January 28, 2013 Gregory L. Atwater (the "Trustee") was appointed Trustee in both chapter 7 cases. On May 2, 2013 the Trustee filed the Motion, seeking entry of an order approving the settlement agreement attached as Exhibit A to the Motion (the "Agreement").

Evaluation Solutions was formed in 2005 as a provider and facilitator of customized programs for mortgage servicers and lenders through use of a proprietary service platform developed to deal with real estate valuation challenges. ES Appraisal is Evaluation Solutions' wholly-owned affiliate and acted as the appraisal arm of the business while Evaluation Solutions' operations focused on brokers price opinions and value reconciliations.

On or about January 1, 2010 Chase and Evaluation Solutions entered into that certain Master Services Agreement (the "MSA"). Pursuant to the MSA, Evaluation Solutions (1) provided Chase with a comprehensive network of resources, including brokers, agents and

2

appraisers covering the entire United States and its territories, and (2) pursuant thereto, provided Chase with appraisals, brokers price opinions and value reconciliations. All brokers, agents and appraisers were independently selected by Evaluation Solutions. Chase did not direct which brokers, agents and appraisers were to be utilized by Evaluation Solutions.

On November 30, 2011 Summit Financial Resources, L.P. ("Summit") and the Debtors entered a Loan and Security Agreement (the "Security Agreement") through which Summit extended a $2,000,000 revolving line of credit on a secured basis to the Debtors. Under the Security Agreement, Evaluation Solutions pledged, *inter alia*, funds due from Chase under the MSA to Summit as collateral. On July 12, 2012 Summit and the Debtors agreed to increase the amount of the loan to $2,500,000 under an Amended and Restated Promissory Note and First Amendment to Loan and Security Agreement (the "Amended Security Agreement").

On December 18, 2012 Chase terminated the MSA pursuant to its terms. Chase acknowledges it owed Evaluation Solutions $2,250,000 as of the Petition Date (the "Chase Receivable").

On December 28, 2012 Summit notified the Debtors of the Debtors' default under the Amended Security Agreement and that Summit was exercising its rights and remedies, including foreclosing Summit's security interest in funds due from Chase under the MSA. Summit also notified the Debtors' account debtors, including Chase, that Summit had, *inter alia*, foreclosed its security interest in the Debtors' accounts receivable and demanded payment on those receivables.

The Agreement provides that Chase will pay $2,316,000 to the Trustee in consideration for a release by the Trustee on behalf of the Debtors and the bankruptcy estates from all claims and liabilities of any kind arising out of or related to 11 U.S.C. §§ 547 through 551, the loan documents, Summit's secured claim, approximately $177,000 which the Trustee is in possession

3

of, the MSA, and the Chase Receivable. The Agreement also provides for the entry by the Court of a bar order which would permenantly enjoin any and all third parties who are creditors of the Debtors from initiating or continuing claims against Chase for services performed at the request of Debtors for the benefit of Chase (the "Bar Order").

On May 23, 2013, Provalue filed a complaint (the "Provalue Complaint") against Chase in the Superior Court of the State of California, County of Santa Clara, Case No. 113CV24680. The Provalue Complaint alleges the following seven causes of action: (i) Breach of Contract; (ii) Violation of Business and Professions Code § 17200, et seq.; (iii) Money Had and Received; (iv) Work and Labor – Services Rendered; (v) Quantum Meruit; (vi) Conversion; and (vii) Unjust Enrichment (the "Provalue Action"). The Agreement, if approved, would bar actions such as the Provalue Action. Heidi Carter, the executive director of third party oversight for Chase, testified at the Hearing that Chase would not enter into the Agreement absent the entry of the Bar Order.

Based upon the Trustee's investigation to date, the Trustee determined that the Agreement is in the best interest of creditors and that in his business judgment the Court should approve the Agreement. According to the Trustee, the key benefits of the Agreement include: (1) satisfaction of Summit's secured claim; (2) release of Summit's blanket lien on all property of the bankruptcy estates; and (3) $100,000 coming into the bankruptcy estate free and clear of Summit's security interest. At the time of the Hearing, the bankruptcy estates of the Debtors had approximately $140,000 in cash. The Trustee testified that additional recovery was expected through the auction of personal property and the potential sale of software and intellectual property.

## CONCLUSIONS OF LAW

In its objection Provalue asserts that: 1) monies owed by Chase for services rendered by Provalue are not property of the bankruptcy estate because the contracts for real property valuation services were between Chase, through its agent (the Debtors), and Provalue; 2) the Court lacks subject matter jurisdiction to approve the Agreement and the matter is not a core proceeding; 3) the Agreement is not fair and equitable; and 4) even if the Agreement is approved, the Court should deny the Bar Order on the grounds that it is not fair and equitable. The Court will address each argument in turn.

I.   The Accounts Payable Owed by Chase to the Debtors are Property of the Estate

Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Section 541 is construed broadly, so as to effectuate Congressional intent that a wide range of property be included in the estate." Olympia & York Fla. Equity Corp. v. Bank of New York (In re Holywell Corp.), 913 F.2d 873, 881 (11th Cir. 1990). "[W]hether a debtor's interest in property is property of the estate is a federal question," but courts must look to state law to decide whether the debtor had a legal or equitable interest in the property when it filed for bankruptcy. Bracewell v. Kelley (In re Bracewell), 454 F.3d 1234, 1243 (11th Cir. 2006). "A debtor's interest in its pre-petition contracts becomes property of the debtor's estate upon the filing of a bankruptcy petition." In re Fiddler's Creek, LLC, 2010 WL 661876 * 5 (Bankr. M.D. Fla. September 15, 2010). Simply put, the bankruptcy estate inherits all of the rights and obligations of the debtor under contracts as of the commencement of the bankruptcy case. Sums due pursuant to the MSA and all valid legal interests in any receivables due thereunder, including the Chase Receivable, are clearly property of the estate.

<u>Provalue does not hold a viable claim against Chase for Breach of Contract</u>

As detailed in the Motion, in January 2010, Evaluation Solutions and Chase entered into the MSA, through which the Debtors agreed to, *inter alia*, provide a network of resources to conduct appraisals for Chase in exchange for payment for those services. The MSA was a contract between Evaluation Solutions and Chase, required Evaluation Solutions to provide Chase with certain services, and obligated Chase to pay Evaluation Solutions directly for all such services.

Through the Provalue Action, Provalue sued Chase for the repayment of funds owed by the Debtors to Provalue and others similarly situated, and is attempting to recover the same funds due Evaluation Solutions by Chase pursuant to the MSA. In the Provalue Objection, Provalue asserts that Chase may be held liable for breach of contract as the principal of Evaluation Solutions for services that were ordered by Chase and for it which it received the benefit. Provalue relies on the word "agent" as contained in 12 C.F.R. § 323.5(b) which requires institutions regulated by the Office of the Comptroller of the Currency to obtain appraisals conforming with the Uniform Standards of Professional Appraisal Practice, the codification of the generally accepted standards for the profession, either "directly" or through an "agent". Agent is not defined in the regulations found in Part 323 of Chapter III of the Code of Federal Regulations. Therefore, the Court must turn to the common law of agency.

An actual agent is an employee of the principal. <u>Van't Rood v. County of Santa Clara</u>, 113 Cal. App. 4th 549, 570 (6th Cal. Ct. App. 2003). Actual agency typically arises by express agreement but may also be implied from the conduct of the parties. <u>Id.</u> at 572. Apparent or ostensible agency requires 1) conduct by the alleged principal that would cause a reasonable person to believe that the alleged agent was the agent of the alleged principal and 2) reliance on

that apparent agency relationship by the plaintiff. Mejia v. Cmty. Hosp. of San Bernandino, 99 Cal. App. 4th 1448, 1453 (4th Cal. Ct. App. 2002). The essential element of an agency relationship is control. "In the absence of the essential characteristic of the right of control, there is no true agency. The fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other. An agency is proved by evidence that the person for whom the work was performed had the right to control the activities of the alleged agent." Van't Rood, 113 Cal. App. 4th at 572 (citations omitted).

There is no evidence before the Court that Chase exercised, or had the right to exercise, control over Evaluation Solutions. Section 14.8 of the MSA expressly disclaims any right to control and explicitly sets forth that Evaluation Solutions would at all times remain an independent contractor. Evaluation Solutions was solely responsible for selecting and sourcing the appraisers utilized, and was solely responsible for making all payments due appraisers. Provalue does not hold a viable claim against Chase for breach of contract. To the extent that a breach of contract claim exists, that claim belongs to the Trustee.[2]

II. The Court has Subject Matter Jurisdiction to Approve the Agreement and the Motion is a Core Proceeding

The Court has subject matter jurisdiction over this matter because the Chase Receivable is property of the estate under § 541 and clearly falls within the confines of matters "arising under" the Bankruptcy Code. See Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006). Moreover, the Motion involves the distribution of property of the estate and the liquidation of

---

[2] Provalue also asserts for the first time in its proposed Findings of Fact and Conclusions of Law that the Bar Order is not fair and equitable because it could extinguish valid claims held by Provalue, i.e., the six remaining claims set forth in the ProValue Action: (ii) Violation of Business and Professions Code § 17200, et seq.; (iii) Money Had and Received; (iv) Work and Labor – Services Rendered; (v) Quantum Meruit; (vi) Conversion; and (vii) Unjust Enrichment (the "Provalue Action"). The Court will address that argument in Section IV of these Findings of Fact and Conclusions of Law.

7

estate assets, and is therefore a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). See, e.g., Sanders Confectionary Prods., Inc. v. Heller, Fin., Inc., 973 F.2d 474, 483 (6th Cir. 1992)(noting that [a] core proceeding invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy.").

III.   The Agreement is Fair and Equitable

Federal Rule of Bankruptcy Procedure 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "The Trustee, as proponent of the proposed settlement, has the burden of establishing that the settlement is fair and equitable and should be approved by the Court." In re Kay, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998) (citing In re A & C Props., 784 F.2d 1377, 1381 (9th Cir. 1986)). The standard in this Circuit for determining whether to approve a compromise or settlement pursuant to Rule 9019(a) is set forth in Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.), 898 F.2d 1544 (11th Cir. 1990), in which the Eleventh Circuit stated as follows:

> When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:
>
>> (a) The probability of success in the litigation;
>> (b) the difficulties, if any, to be encountered in the matter of collection;
>> (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
>> (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id. at 1549.

Considering the Justice Oaks factors and the evidence before the Court, the Court finds that the Agreement should be approved. While there may be hypothetical scenarios that could result in a more favorable distribution to creditors, there is no evidence indicating the Agreement

8

is not fair, equitable, or the best possible result for the bankruptcy estates, the Debtors' creditors and parties in interest. The Agreement provides for satisfaction of Summit's secured claim and frees up the balance of the assets in the bankruptcy estate for distribution to other creditors. The Agreement also provides for payment in excess of sums due under the MSA. Because Summit asserts a blanket lien on the Debtors' assets and it exercised its rights to sums due under the MSA prior to the Petition Date, the Trustee is unlikely to recover funds from Chase in excess of sums to be paid under the Agreement, especially considering additional administrative expenses the Trustee would incur in doing so. The Agreement provides for resolution of Summit's secured claims and liens against all property of the Debtors' estates in an efficient, economical manner, without the need for further litigation and attendant costs and risks. As such, the Court finds the Trustee properly exercised his business judgment in executing the Agreement, and therefore the settlement contained therein satisfies the factors set forth by the Eleventh Circuit in Justice Oaks, 898 F.2d at 1544.

IV.    The Proposed Bar Order is Fair and Equitable

Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. "When determining whether to enter a bar order against nonsettling defendants, the court must make a reasoned determination that the bar order is fair and equitable" and must consider "the interrelatedness of the claims that the bar order precludes, the likelihood of nonsettling defendants to prevail on the barred claim, the complexity of the litigation, and the likelihood of depletion of the resources of the settling defendants." Matter of Munford, Inc., 97 F.3d 449, 455 (11th Cir. 1996). The most significant factor at issue in the instant matter is the likelihood of Provalue prevailing on the barred claims, those claims at issue in the Provalue

Action. Upon a review of the causes of action set forth in the Provalue Action and the applicable law, the Court finds that it is highly unlikely that Provalue would succeed on the claims.

When a requested bar order is integrally related to a trustee's claim, is an essential and critical element of the settlement, is necessary to achieve complete resolution of the issues contained within the settlement agreement, and is fair and equitable, the entry of a bar order is a proper exercise of the Court's power under 11 U.S.C. § 105(a). In re Rothstein Rosenfeldt Adler, P.A., 2010 WL 3743885 * 7 (Bankr. S.D. Fla. Sept. 22, 2010). The Court finds that the Bar Order is integrally related to the Trustee's claim, is an essential and critical element of the settlement, is necessary to achieve complete resolution of the issues contained within the settlement agreement, and is fair and equitable. Absent the Bar Order, Chase would deposit the money into the Court registry, file an action to determine who is entitled to it, and protracted and costly litigation would then ensue. The Court finds that the entry of the Bar Order is proper pursuant to 11 U.S.C. § 105(a).[3]

## CONCLUSION

Based on the foregoing, the Court finds that the Agreement satisfies the standards for such settlements as set forth by the Eleventh Circuit in Justice Oaks, 898 F.2d at 1544 and is in the best interest of all creditors and the bankruptcy estates. The Court also finds that the entry of

---

[3] To the extent that Provalue argues that the Court lacks subject matter jurisdiction to enter the Bar Order, that argument fails. The continuation of the Provalue action would directly impact the estate because the Trustee would not receive the $2,316,000 from Chase in the absence of the Bar Order. Accordingly, the Court has subject matter jurisdiction to enter the Bar Order. See In re Superior Homes & Invs., LLC, 2013 WL 2477057 *2 (11th Cir. June 10, 2013)(holding that bankruptcy court had "related to" jurisdiction to approve compromise between trustee and fraudulent transfer defendants, which included bar order enjoining objecting creditors' state court litigation, because trustee would not have received the settlement proceeds in the absence of bar order).

the Bar Order is proper pursuant to 11 U.S.C. § 105. The Court will issue a separate Order granting the Motion consistent with these Findings of Fact and Conclusions of Law.

**DATED** this 27 day of June 2013, in Jacksonville, Florida.

*[signature]*

**Jerry A. Funk**
United States Bankruptcy Judge